IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA and
STATE OF CALIFORNIA,

        Plaintiffs,

           v.

IRON MOUNTAIN MINES and T.W.
ARMAN,

        Defendants.
_____/

Case No. 91-0768-JAM-JFM

ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGEMENT

    This matter comes before the Court on a motion for partial summary judgment (Doc. #1280) by Plaintiff the United States of America ("Plaintiff"), pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") 42 U.S.C. § 9607(a), and Federal Rule of Civil Procedure 56. Defendants Iron Mountain Mines and T.W.

Arman ("Defendants") oppose the motion.[1] (Doc. #1310). For the reasons set forth below, Plaintiff's motion is GRANTED.

FACTUAL AND PROCEDURAL BACKGROUND

Beginning in 1986, the Environmental Protection Agency ("EPA") responded to the release of hazardous waste at what is now called the Iron Mountain Mines Superfund Site ("the site"). The EPA took action to reduce or eliminate acid mine drainage discharges from the site, and incurred costs in doing so ("response costs").

The site has been the subject of litigation in this Court since 1991. In this motion, Plaintiff seeks only response costs incurred through February 29, 1996. Costs incurred after this date to the present, as well as future costs, were part of a previous settlement ("the settlement" or "consent decree") with former defendant Rhône-Poulenc and other settling parties. Defendants were not parties to that settlement, nonetheless Plaintiff does not seek recovery from Defendants for those post-February 29, 1996, costs covered by the settlement.

In 2002, this Court found Defendants to be a "partially responsible party" for the site contamination, and found them jointly and severally liable for response costs under CERCLA

_____

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g).

2

(Doc. #1241). Plaintiff settled with other defendants in the case, but Plaintiff and Defendants Iron Mountain Mines and T.W. Arman engaged in years of ultimately unsuccessful settlement negotiations. In August 2009, Plaintiff brought the present motion for partial summary judgment. In December 2009, Defendants sought reconsideration of the Court's 2002 order, on the issue of apportionment of liability. The motion for reconsideration was denied. (Doc. #1316). Thus, the Court's 2002 order stands, and Defendants remain jointly and severally liable for the entire harm at the site.

Plaintiff seeks a total award of $57,139,669.53 in costs. This includes response costs through February 29, 1996 ($26,968,134.84), plus prejudgment interest through Fiscal Year 2009 ($30,172,534.69).

I.   OPINION

A.   Legal Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Because the purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses," Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986), "[i]f summary judgment is not rendered on the whole

action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). If the moving party meets its burden, the burden of production then shifts so that "the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)). The Court must view the facts and draw inferences in the manner most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

A "scintilla of evidence" is insufficient to support the non-moving party's position; "there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. Accordingly, this Court applies to either a defendant's or plaintiff's motion for summary judgment essentially the same standard as for a motion for directed verdict, which is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." Id. at 251-52.


B. CERCLA

Pursuant to CERCLA Section 107(a), an owner and operator of any facility at which hazardous substances were disposed shall be liable for all costs of removal or remedial actions incurred by the United States government, not inconsistent with the National Contingency Plan. 42 U.S.C. § 9607(a). CERCLA Section 107(a) is a strict liability statute. Burlington Northern v. United States, 129 S. Ct. 1870, 1878 (2009).

The purpose of the National Contingency Plan ("NCP") is "to provide the organizational structure and procedures for preparing for and responding to discharges of oil and releases of hazardous substances, pollutants, and contaminants." 40 C.F.R. § 300.1. The NCP is required by Section 105 of CERCLA and section 311(d) of the Clean Water Act ("CWA"), and is applicable to response actions taken pursuant to CERCLA and the CWA. 40 C.F.R. § 300.2.

In a CERCLA cost recovery action, the government must first establish a prima facie case for recovery. "To establish a prima facie case to recover its response costs under CERCLA § 107, the government has to prove: (1) the site is a "facility"; (2) a "release" or "threatened release" of a hazardous substance

occurred; (3) the government incurred costs in responding to the
release or threatened release; and (4) the defendant is the
liable party. Once the government presents a prima facie case
for response costs, the burden shifts to the defendant to prove
the government's response action was inconsistent with the
National Contingency Plan." United States v. Chapman, 146 F.3d
1166, 1169 (9th Cir. 1998).

Plaintiff has met its burden to establish a prima facie
case for recovery under CERCLA. Prior orders of this Court
established that Defendants are liable parties (See Doc. #1241),
that the site is a CERCLA "facility," (See Doc. #1241) and that
the site released hazardous substances (See Doc. #1241, and U.S.
v. Iron Mountain Mines, Inc., 812 F.Supp. 1528, 1541-42 (E.D.
Cal. 1992)). In the current motion, Plaintiff has set forth in
detail evidence of the costs incurred through February 29, 1996,
by the government in responding to Defendants' release of
hazardous substances.

Accordingly, the burden shifts to Defendants to prove that
the government's response action was inconsistent with the NCP.
Defendants must show that the government's selections of the
remedies, for which it incurred the costs, were inconsistent
with the NCP. United States v. W.R. Grace & Co., 429 F.3d 1224,
1232 n. 13 (9th Cir. 2005). To show inconsistency with the NCP,
Defendant must demonstrate that the EPA's response action was

arbitrary and capricious. <u>United States v. Chapman</u>, 146 F.3d 1116, 1171 (9th Cir. 1998). The Supreme Court has said that in determining whether an agency decision was arbitrary or capricious, the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. This inquiry must be searching and careful, but the ultimate standard of review is a narrow one. When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." <u>Marsh v. Oregon Natural Resources Council</u>, 490 US 360, 377-78 (1989)(internal citations omitted).

Defendants have not met their burden. There is no evidence presented by Defendants which demonstrates that the government's response was inconsistent with the NCP. Defendants also have not offered evidence that the EPA acted in an arbitrary or capricious manner or that there were, "specialists with conflicting views." The most Defendants offer is a statement in their opposition brief that they believe they could present arguments that the selected remedial actions were not consistent with the NCP, if given more time. Defendants do not elaborate on how they would do this or what evidence leads them to even speculate that the response actions were inconsistent with the

NCP. Defendants only submit an affidavit from their counsel stating that they have located and spoken with Mr. Michael Bickers, who was involved in the preparation of a mining proposal as an alternative to EPA remedies. However, Defendants do not offer an affidavit from Mr. Bickers, nor information on the evidence he might present or what testimony he might offer.

Defendants ask for more time to conduct discovery, but as Plaintiff argues, Defendant fails to submit affidavits or set forth the particular facts expected from further discovery. Federal Rule of Civil Procedure 56(e)(2) requires defendants to show that they have set forth in an affidavit or other form the specific facts that they hope to elicit from further discovery, that the facts sought exist, and that these sought-after facts are essential to resist the summary judgment motion.

Defendants admit they have not reviewed the administrative record for evidence of inconsistency with the NCP, but contend that the Court need not reach this issue. Defendants contend that the settlement reached between Plaintiff, Rhône-Poulenc, and the other settling parties precludes further recovery of costs. As discussed below, Defendants' contention is without merit.

E. <u>Settlement Credit</u>

Rhône-Poulenc, later known as Aventis CropScience USA Inc., was a former defendant in this case. Rhône-Poulenc undertook cleanup activities at the site pursuant to EPA administrative orders. Rhône-Poulenc and other defendants later settled with Plaintiff in a consent decree (Doc. #1185), for approximately $154 million to insure future cleanup costs over 30 years, $10 million for natural resource damage and an additional $7 million for future cleanup not covered by the insurance. Thus, Rhône-Poulenc and the other settling defendants are no longer defendants in this case. However, the terms of the settlement are disputed by the parties to the current motion.

Plaintiff contends that the settlement was only for future costs, not for past costs. Thus, the settlement did not include the pre-February 29, 1996, response costs now sought, and does not constitute complete recovery. Defendants argue that Plaintiff has already been compensated for cleanup via the settlement, thus amounting to a complete credit for Defendants against costs now sought.

When a settlement is reached in a CERCLA action, section 113(f)(2) reduces the liability of non-settling responsible parties, by the amount of the settlement. Section 113(f)(2) states that "A person who has resolved its liability to the United States or a State in an administrative or judicially

approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially responsible persons unless its terms so provide, but it reduces the potential liability of others by the amount of the settlement." 42 U.S.C. §9613(f)(2). Furthermore, Section 113(f)(3)(a) provides that if the United States has obtained less than complete relief from a person who has resolved its liability to the United States, the United States may bring an action again any person who has not so resolved its liability.

Defendants argue that the settlement reduces their liability, thus they are entitled to a credit in the amount of the insurance policy paid for by Rhône-Poulenc. In this case, a credit in that amount would not merely offset Defendants' liability, it would eliminate their liability entirely, as the full amount of the insurance policy dwarfs the $26 million in pre- February 29, 1996, response costs that Plaintiff seeks. In Defendants' view, the settlement constitutes complete recovery for Plaintiff, and even if it does not, this will not be definitively known until after the thirty year period of payment for the cleanup insurance. Plaintiff argues that Defendants are not entitled to a credit for past response costs, the EPA has received no money from the settlement for past costs, and the law does not require Plaintiff to wait until the end of the 30

year insurance period to seek compensation from Defendants for past response costs. Plaintiff correctly points out that while the settlement provides the settling defendants with protection from claims for contribution for past costs, this does not mean that the settling defendants paid any money towards past costs. Having reviewed the terms of the consent decree, the Court agrees with Plaintiff that the money paid for the insurance policy was specifically designated for future cleanup and maintenance costs. While the terms of the settlement release the settling parties from any claims for contribution for past or future response costs, there is no evidence that the money paid out for the settlement was for pre-February 29, 1996, response costs.

Plaintiff acknowledges that Defendants are entitled to a credit for future costs being paid for from the insurance policy, as the government has been compensated for these future costs via the settlement. However, this does not entitle Defendants to a credit for past response costs, nor does the settlement release Defendants from liability for past costs, as they were not among the settling parties. Furthermore, Plaintiff notes that the government is not seeking money for past natural resource damage, thus to the extent that past natural resource damage costs were covered by the settlement, this does not reduce Defendants' liability for past response costs.

CERCLA Section 113(f)(3) permits suit against non-settling responsible parties only if the relief obtained by the United States was less than complete. United States v. Occidental Chem. Corp., 200 F.3d 143, 148 (3rd Cir. 1999). The Court in Occidental found that until the government had completed its cleanup and been paid, it was entitled to sue remaining responsible parties. Id. at 149-50. When deciding suits for CERCLA recovery, courts have looked to the amount of money in the government's actual possession and control, to determine the amount of a credit, if any, non-settling parties should receive. The Court in Goodrich v. Betkoski, 99 F.3d 505, 529 (2d Cir. 1996), overruled on other grounds in New York v. Natl. Services Indus., 352 F.3d 682, 684 (2d Cir. 2003), found that non-settling parties were not entitled to a Section 113(f)(2) credit for a payment made as part of a consent decree, because "The government had neither possession nor actual control over the $1.975 million given to the Laurel Park Coalition." Likewise, the Court in O'Neil v. Piccillo, 682 F.Supp. 706, 729-30 (D.R.I. 1988) found that non-settling defendant were entitled to a credit for cash received by the State, but not for the value of promised future remedial work.

CERCLA Section 122 authorizes the President to enter in to settlements, "whenever practicable and in the public interest and consistent with the NCP," to expedite remedial actions and

minimize litigation. 42 U.S.C. § 9622(a). The Court agrees with Plaintiff that a finding that a settlement which insured payment for future cleanup precluded recovery of past cleanup costs would be inconsistent with CERCLA's intent to encourage settlements, as it would discourage the government from entering into settlements. Plaintiff has set forth clearly and in great detail the past response costs sought by the government, and has demonstrated that payment to the EPA for such costs was not included in the settlement with Rhône-Poulenc and the other settling parties.

Accordingly, the Court finds that Defendants are not entitled to a credit for past costs, as the settlement does not constitute complete recovery. The settlement did not provide for pre-February 29, 1996, response costs, the EPA received no money for such costs from the settlement, and Defendants, as non-settling partially responsible parties, may be held liable for these costs.


F. Administrative record

CERCLA Section 113(j)(1) limits judicial review of any issues concerning the adequacy of the response action taken, to the administrative record. The Court applies the arbitrary and capricious standard to this review. 42 U.S.C. § 9613(j)(1). Defendants allege that they did not have sufficient time to

review and challenge the extensive administrative record, and

ask the Court for more time. The Court has already granted an

extension of time, postponing Defendants' deadline for

responding to the summary judgment motion for 5 months.

Throughout the course of settlement negotiations, Defendants

have had years to review the administrative record, had they

chosen to do so. Thus the Court will not allow further time for

Defendants to attempt to find or create issues of material fact.

As Plaintiff notes, there is no indication from Defendants that

even if given more time, they would be able to come up with a

valid dispute.

      With respect to evidentiary issues, Defendants have raised

a variety of evidentiary objections challenging the

admissibility of Plaintiff's evidence. [2] Defendants have also

tentatively disputed some of the facts put forth by Plaintiff in

Plaintiff's statement of undisputed facts, asking for more time

to respond. As explained above, the Court will not grant more

Defendants more time for discovery or further delay resolution

of this matter. Defendants have not met their burden of

---

[2] Objections filed by Defendants (Doc. # 1310) are overruled for
purposes of these motions. The 117 pages of 125 objections are
unnecessary to the determination of this motion. See Judge
William Shubb's excellent discussion of evidentiary objections
in Burch v. Regents of the University of California, 433
F.Supp.2d 1110, 1118-1122 (E.D. Cal. 2006).

demonstrating inconsistency with the NCP, nor have they shown that the administrative record reveals arbitrary or capricious decision making by the EPA.

Plaintiff has demonstrated a prima facie case for recovery of response costs, and Defendants have not shown the response to be inconsistent with the NCP. Accordingly, Plaintiff's motion for partial summary judgment is granted. Defendants' are not entitled to a credit for any portion of the settlement to cover the past response costs sought by Plaintiff.

III. ORDER

For the reasons set forth above, the United States motion for partial summary judgment for response costs is GRANTED.

It is ordered that the defendants T.W. Arman and Iron Mountain Mines, Inc. are jointly and severally liable to the United States, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for response costs in the amount of $26,968,134.84 incurred by federal agencies through February 29, 1996, responding to releases and threatened releases of hazardous substances at the Iron Mountain Superfund Site.

It is further ordered that defendants T.W. Arman and Iron Mountain Mines, Inc. are jointly and severally liable to the United States, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for prejudgment interest accruing on the response costs

incurred by federal agencies, interest through Fiscal Year 2009
having been calculated to be $30,172,534.69.

It is further ordered that Defendants T.W. Arman and Iron
Mountain Mines, Inc. are jointly and severally liable for
additional prejudgment interest which accrues after September
30, 2009, and until this judgment is paid in full.


IT IS SO ORDERED.


Dated: July 13, 2010                            _____
                                                JOHN A. MENDEZ,
                                                UNITED STATES DISTRICT JUDGE