1  LARRY MARTIN CORCORAN
   Environmental Enforcement Section
2  Environment and Natural Resources Division
   United States Department of Justice
3  P.O. Box 7611
   WASHINGTON, DC 20044-7611
4  202-305-0370
   larry.corcoran@usdoj.gov
5  BENJAMIN B. WAGNER
   United States Attorney
6  Eastern District of California
   YOSHINORI H.T. HIMEL
7  Assistant United States Attorney
   501 "I" Street, Suite 10-100
8  Sacramento, California  95814
   (916) 554-2760
9
   Attorneys for the United States
10

11                    IN THE UNITED STATES DISTRICT COURT
12                   FOR THE EASTERN DISTRICT OF CALIFORNIA

13
   UNITED STATES OF AMERICA,              )   Civil No. S-91-0768 JAM-JFM
14                                         )
                   Plaintiff,              )   (Consolidated for all purposes with
15        v.                               )   Civil No. S-91-1167 JAM-JFM)
                                           )
16  IRON MOUNTAIN MINES, INC. and         )
    T.W. ARMAN,                            )
17                                         )
                   Defendants.             )   **MEMORANDUM IN SUPPORT OF**
18  _____    )   **UNITED STATES' MOTION TO**
    STATE OF CALIFORNIA, On behalf of the )   **AMEND THE JULY 13, 2010**
19  California Department of Toxic Substances )  **ORDER FOR PARTIAL**
    Control and the California Regional Water )  **SUMMARY JUDGMENT FOR THE**
20  Quality Control Board for the Central Valley ) **UNITED STATES' RESPONSE**
    Region,                                )   **COSTS**
21                                         )
                   Plaintiff,              )
22        v.                               )   Date:   October 6, 2010
                                           )   Time:  9:30 a.m.
23  IRON MOUNTAIN MINES, INC. and         )   Courtroom No. 6
    T.W. ARMAN,                            )
24                                         )   Hon.   John A. Mendez
                   Defendants.             )
25                                         )
    AND RELATED COUNTER- AND              )
26  THIRD-PARTY CLAIMS                     )
    _____    )
27

28

1
2

**TABLE OF CONTENTS**

3
4

I.      CERCLA MANDATES ENTRY OF DECLARATORY JUDGMENT . . . . . . . . . . . . . . 1

5
6
7

II.     THE CONSENT DECREE SETTLEMENT DID NOT PAY FOR RESPONSE COSTS
        AFTER FEBRUARY 1996 AND BEFORE DECEMBER 8, 2000, AND HAS NOT
        PAID FOR MANY COSTS EPA INCURRED AFTER DECEMBER 8, 2000 . . . . . . . . 3

8
9

III.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10
11

**TABLE OF AUTHORITIES**

12

CASES

13
14

*Dent v. Beazer Materials and Servs., Inc.*, 156 F.3d 523 (4th Cir. 1998) . . . . . . . . . . . . . . . . . .  2

15

*United States v. USX Corp.*, 68 F.3d 811 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

16

*Kelley v. E.I. DuPont de Nemours and Co.*, 17 F.3d 836 (6th Cir. 1994)) . . . . . . . . . . . . . . . .  2

17

*In re Dant & Russell, Inc.*, 951 F.2d 246 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18

Cal. Dep't of Toxic Substances v. Interstate Non-Ferrous Corp.,
        298 F.Supp.2d 930 (E.D. Ca. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

19
20

STATUTES

21

Comprehensive Environmental Response, Compensation, and Liability Act of 1980,
        as amended, 42 U.S.C. § 9601-9675 ("CERCLA")

        Section 113(g)(2)(B) of CERCLA; 42 U.S.C. § 9613(g)(2)(B)  . . . . . . . . . . . . . . . . . . .  1

22
23
24

COURT RULES

25

Fed. R. Civ. P. 60 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

26
27

28

1
2
3

**MEMORANDUM IN SUPPORT OF**
**UNITED STATES' MOTION TO AMEND THE**
**JULY 13, 2010 ORDER FOR PARTIAL SUMMARY JUDGMENT FOR**
**THE UNITED STATES' RESPONSE COSTS**

4
5
6
7
8
9
10
11
12
13
14
15

Pursuant to Fed.R.Civ.P. 60, the United States moves this Court to amend its July

13, 2010 Order (granting partial summary judgment for the United States' unpaid response costs)

in two respects: (1) to order the grant of declaratory judgment that the Defendants, T.W. Arman

and Iron Mountain Mines, Inc. ("Defendants"), are liable to the United States for additional

response costs incurred for environmental cleanup of the Iron Mountain Mine Superfund Site,

and for prejudgment interest on those costs, to the extent that those costs have not been, and are

not being paid pursuant to the December 8, 2000 Consent Decree settlement; and (2) to clarify

that the Consent Decree settlement paid *no* United States' response costs incurred between

February 29, 1996, and the date of the December 8, 2000 settlement, and pays only some, but not

all, of the "future costs" incurred after the entry of the December 8, 2000 Consent Decree

settlement.  In support of this request, the United States presents the following explanation.

16

**I.      CERCLA MANDATES ENTRY OF DECLARATORY JUDGMENT**

17
18
19
20
21
22
23

Section 113(g)(2)(B) of the Comprehensive Environmental Response,

Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(g)(2)(B), provides that, in any

cost recovery action, "the court shall enter a declaratory judgment on liability for response costs

or damages that will be binding on any subsequent action or actions to recover further response

costs or damages."  This Court previously granted partial summary judgment on the Defendants'

liability as potentially responsible parties.[1]  *See* Dkt. 1241 (October 1, 2002 Order).[2]

24
25
26

---

[1]      In its Proposed Order filed with its recent Motion for Partial Summary Judgment for
Response Costs, among other relief, the United States sought an order "that the defendants T.W.
Arman and Iron Mountain Mines, Inc. are jointly and severally liable for additional costs

27
28

**July 30, 2010 Memorandum in Support of Motion to Amend July 13, 2010 Order**          Page 1

1   Declaratory judgment is mandatory, includes future costs, and has preclusive effect as to liability

2   on all subsequent actions to recover response costs for the same site.  *See, e.g.*, *Dent v. Beazer*

3   *Materials and Servs., Inc.*, 156 F.3d 523, 531 (4th Cir. 1998) (quoting *Kelley v. E.I. DuPont de*

4   *Nemours and Co.*, 17 F.3d 836, 844 (6th Cir. 1994)); *United States v. USX Corp.*, 68 F.3d 811,

5   819 (3rd Cir. 1995); *Cal. Dep't of Toxic Substances v. Interstate Non-Ferrous Corp.*, 298

6   F.Supp.2d 930, 957-58 (E.D. Ca. 2003) (quoting *In re Dant & Russell, Inc.*, 951 F.2d 246, 249

7   (9th Cir. 1991)).  *See also Dent*, 156 F.3d at 532; *Cal. Dep't of Toxic Substances*, 298 F.Supp.2d

8   at 958 ("[Plaintiff] is not required to now provide any proof of the nature or amount of future

9   costs.").  Declaratory judgment encourages prompt remedial action.  *See, e.g., Dent*, 156 F.3d at

10  532.  The entry of declaratory judgment does not preclude the Defendants, in a future action,

11  from challenging the substance of any future costs under the appropriate legal standard.  *See,*

12  *e.g., United States v. USX Corp.*, 68 F.3d 819 n.17 ("a defendant would remain able to contest

13  the amount of the response costs or whether the work undertaken was [in]consistent with the

14  national contingency plan"); *Kelley*, 17 F.3d at 845 ("Accordingly, the defendants are free to

15  challenge the substance of any costs expended in the future.").

16          The Defendants may have no assets with which to pay any more than the Court

17  has already ordered them to pay.  However, declaratory judgment will protect the Superfund

18  from the possibility that (1) the Defendants control concealed assets exceeding the amount the

19  Court has ordered them to pay, or (2) circumstances cause a significant appreciation in the value

20  of the assets the Defendants are known to own, especially of the land on the Iron Mountain Mine

21  Superfund Site.  *See United States v. USX Corp.*, 68 F.3d at 819-20 ("While pursuit of the

22  _____

23  incurred at the Iron Mountain Superfund Site, and for prejudgment interest on those costs."  *See*
    Dkt. 1280-2 (formerly 1280-3, *see* footnote 3, *infra*).

24

25  [2/]        Page 2 of the July 13 Order also appears to contain a typographical error, in that it refers
    to "partially responsible party" instead of "potentially responsible party."  *Compare* Dkt 1318 at 2
26  *with* Dkt. 1241 (Order granting summary judgment on liability) at 2.

27

28  **July 30, 2010 Memorandum in Support of Motion to Amend July 13, 2010 Order        Page 2**

1    request for declaratory relief may seem to be unnecessary from a practical point of view . . . , it

2    was certainly within the prerogative of the United States to seek such relief.").  Declaratory

3    judgment will also allow the parties and this Court to conclude the present litigation for the time

4    being.

5

6    **II.    THE CONSENT DECREE SETTLEMENT DID NOT PAY FOR RESPONSE
         COSTS AFTER FEBRUARY 1996 AND BEFORE DECEMBER 8, 2000, AND HAS
7        NOT PAID FOR MANY COSTS EPA INCURRED AFTER DECEMBER 8, 2000**

8            As the United States discussed in it memoranda in support of its Motion for

9    Partial Summary Judgment for Response Costs, by agreement with this Court in 1996, the

10   United States limited its motion to costs incurred through February 29, 1996, in order to allow a

11   close of discovery shortly thereafter, and *not* because all later costs were part of a settlement.

12           Consistent with the proposal made by the Plaintiffs at the status
13           conference held April 25, 1996, and in order to avoid the need to reopen
             discovery, this motion seeks judgment only for response costs incurred
14           and paid through February 1996.  *See* Transcript of April 25, 1996
             Proceedings at 42.  *See also* Dkt. 330, April 17, 1996 Status Conference
15           Brief of Plaintiffs, at 18 (filed April 18, 1996).  Costs incurred after that
             time may be addressed in future proceedings.
16

17   Dkt. 1280-1 (August 28, 2009 Memorandum of the United States in Support of Motion for

18   Response Costs) at 1-2.[3]

19   _____

20   [3]      On August 28, 2009, ECF provided the United States with a copy of its filed
     Memorandum with docket number 1280-2, but copies on the Courts' current docket are
21   numbered 1280-1.
22           In a footnote to the quoted passage, the United States added that, "[t]he United
     States committed to limit any initial request for costs to costs incurred through February 29,
23   1996, in order that defendants might obtain discovery on all costs the United States would seek
     to recover."  Dkt. 1280-1 at 2, n.2.  (The discovery cut off date for the Plaintiff State Agencies
24   was March 1996.)  The text of the Memorandum went on to state that, in the interests of judicial
     economy, the United States was not seeking costs for Department of Justice activities nor for
25   EPA in-house activities ("intramural costs").  *Id.* at 2.
26

27

     **July 30, 2010 Memorandum in Support of Motion to Amend July 13, 2010 Order          Page 3**
28

1    As this Court observed, the settlement with Rhône-Poulenc gave the United States

2    no monies for any past costs, meaning for response costs the United States incurred prior to the

3    December 8, 2000 Consent Decree.  *See* Dkt. 1318 (July 13, 2010 Order) at 11.  Therefore, all

4    costs incurred between February 29, 1996, and December 8, 2000, remain unaddressed.

5    Excepting natural resources damages, which the United States does not seek from the

6    Defendants, the settlement paid only for future (post December 8, 2000 settlement) Site response

7    costs, and only for some of those.  "Future costs" meant costs incurred after the date of the

8    settlement, December 8, 2000.  Most of future cost payments have been made to third parties,

9    *i.e.*, to the Site Operator and AIG in order to maintain and operate the Site water treatment plant.

10   *See* Dkt. 1313 (Reply in Support of United States' Motion), at 1 ("EPA's answer is that it

11   received not a dime in the settlement for *past costs* . . ."), *id.* at 3 ("The Consent Decree provided

12   *no* cash payments for past costs other than the natural resource damages, which the United States

13   does not seek to recover from the defendants Arman and IMMI.").[4]  However, a portion of this

14   Court's Order could be read to state, erroneously, that all post February 1996 response costs are

15   part of the Consent Decree settlement.  *See* Dkt. 1318 (July 13, 2010 Order) at 2 ("Costs incurred

16   after this date [February 29, 1996] to the present, as well as future costs, were part of a previous

17   settlement . . .").

18

19   [4]    The settlement did pay approximately $8,000,000 to a Special Account for use by the
20   Plaintiffs in directly paying certain future costs to be agreed upon by the Plaintiffs.  *See* Dkt.
     1280-5 (Exhibit B; formerly 1280-6, *see* footnote 3, *supra*) at 37-38, and 1313-2 (Exhibit G) at
21   5-6 (Declarations of Rick Sugarek).  Most of those funds have since been spent on new response
22   costs incurred by EPA after December 8, 2000.  *See Id.*
            Rhône-Poulenc paid approximately $150,000,000 for its own response actions
23   undertaken prior to the settlement, including its own response actions prior to February 29, 1996.
     However, none of that money was paid to the United States, nor are those costs of Rhône-
24   Poulenc included in the costs the United States has sought to recover from the Defendants.  *See,*
     *e.g.*, Dkt. 1313 (Reply in Support of United States' Motion) at 8, n.12.  As part of the settlement,
25   Rhône-Poulenc released all claims for its own costs, both against the government Plaintiffs (the
26   United States the Plaintiff State Agencies) and against the Defendants.  *See id.*

27

     **July 30, 2010 Memorandum in Support of Motion to Amend July 13, 2010 Order          Page 4**
28

1   Moreover, as this Court is aware, the parties to the Consent Decree did not expect

2   it to provide for *all* future costs incurred after December 8, 2000.

3   The Terminal Payment was intended to fund replacement of the
4   Water Treatment Plant at the end of its anticipated 30 year operating life,
    and to fund its continued operation in perpetuity, *e.g*., as if by purchasing
5   another insurance policy for another 30 years of O&M and another
6   Terminal Payment Deposit. *See* Exhibit G (Sugarek Supp Decl.), ¶ 23
    ("as if" because EPA did not and does not presently have such authority).
7   Necessary replacement of the water treatment plant and future O&M
    funding was based on an assumption that future O&M costs would be
8   equal to those originally projected, adjusting for inflation. *See id.*
9   Experience has shown that annual operating costs have exceeded
    projected costs by over eight percent. *Id.*, ¶ 12. That suggests the
10  Terminal Payment will not fully cover future O&M costs. Furthermore,
    the parties to the Consent Decree never expected the Terminal Payment to
11  cover all future costs, because other future costs were anticipated in
    addition to the O&M costs which were the subject of the Consent Decree.
12  *See* November 15, 2000 Memorandum in Support of Joint Motion for
    Entry of Consent Decree, Dkt. 1178, at 14 ("Although the Aventis
13  payment does not cover EPA's past costs or the costs of all future Site
    activities, the Aventis contribution is very substantial and assures future
14  performance of the key components of the Iron Mountain remedies."). *See*
    *also* Exh. G, (Sugarek Supp. Decl.), ¶ 24-27. Examples of additional
15  future costs are EPA's ongoing regulatory oversight of the Site,
16  investigation and consideration of additional remedies, the approximately
    $40 million construction cost for ROD 4 (Slickrock Creek Retention
17  Reservoir to capture and treat area sources of contamination), and the
    approximately $41.3 million construction cost for ROD 5 (Spring Creek
18  Arm of Keswick Reservoir Dredging Project). *See Id.*, ¶ 24-27.[5] Under
19  the Consent Decree, the Terminal Payment may only be used to pay future
    costs, so long as any future costs are unreimbursed. Because the Terminal
20  Payment is not expected to pay all future costs, and the defendants are not
21  being charged for future costs, the defendants can never expect a credit
    from the Terminal Payment.

22   •   •   •

23   Even if the Terminal Payment were to exceed all future costs, and

24   _____

25   [5]      Approximately seven or eight million dollars of the Keswick Reservoir Dredging Project
    is being paid from the Special Account, which was funded by the Consent Decree settlement.
26   Dkt. 1313-2, (Exh. G, Sugarek Supp. Decl.) at ¶ 27.

27

28   **July 30, 2010 Memorandum in Support of Motion to Amend July 13, 2010 Order**          Page 5

an excess were available to reimburse past costs incurred prior to the date of the Consent Decree, there are approximately $24,000,000 in past costs incurred between February 1996 and December 2000 which must be reimbursed, *plus* interest which continues to accrue.  *See* Exh. G (Sugarek Supp. Decl.), ¶ 24.  . . .

Dkt. 1313 (United States' Reply) at 12-13.  *See also id.* at 5 ("The expectation of the parties to the settlement was that the Terminal Payment would not cover all costs."); Dkt. 1313-2 (Exhibit G, Supplemental Declaration of Rick Sugarek) at 2-5.

## III.    CONCLUSION

The United State has incurred unreimbursed response costs in addition to those that were the subject of the motion this Court decided, and it expects to incur additional response cost that will not be paid by the settlement embodied in the Consent Decree.

Under CERCLA, the United States is entitled to mandatory declaratory judgment for liability for those costs.  For these reasons, the United States moves this Court to amend its July 13, 2010 Order (1) to order the grant of declaratory judgment that the Defendants are liable to the United States for additional response costs incurred at the Iron Mountain Mine Superfund Site, and for prejudgment interest on those costs, to the extent that those costs have not been, and are not being paid pursuant to the December 8, 2000 Consent Decree settlement; and (2) to clarify that the December 8, 2000 Consent Decree settlement paid *no* United States' response costs incurred between February 28, 1996, and the date of the December 8, 2000 Consent Decree settlement, and pays only some, but not all, of the "future costs" incurred after the entry of the December 8, 2000 Consent Decree settlement.

Dated: July 30, 2010

Respectfully submitted,

/s/ Larry Martin Corcoran
LARRY MARTIN CORCORAN
Environmental Enforcement Section

Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
WASHINGTON, DC 20044-7611
202-305-0370
larry.corcoran@usdoj.gov

BENJAMIN B. WAGNER
United States Attorney
Eastern District of California

YOSHINORI H.T. HIMEL
Assistant United States Attorney
501 "I" Street, Suite 10-100
Sacramento, California  95814
(916) 554-2760

Attorneys for the United States

OF COUNSEL

Thelma Estrada, Esq.
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, California  94105